UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LOFTIN & LEBLANC LLC** | **CASE NO. 2:22-CV-02883** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **AMGUARD INSURANCE CO** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment [doc. 17] filed by defendant AmGuard Insurance Company on plaintiff's bad faith claims. Plaintiff opposes the motion. Doc. 19.

### I.
### BACKGROUND

Plaintiff is a law practice in Lake Charles, Louisiana, which was at all relevant times insured under a commercial policy issued by AmGuard. That policy provides, in relevant part, coverage for business personal property ("BPP") subject to a limit of $138,000.00. Doc. 17, att. 4, p. 11. Plaintiff made a claim under the policy following Hurricane Laura, which struck Southwest Louisiana on August 27, 2020. AmGuard paid policy limits on the BPP claim on January 26, 2021, after investigating the claim through a third-party adjuster. Plaintiff alleges, however, that AmGuard failed to timely or adequately compensate it for its covered losses. It filed suit in this court on August 18, 2022, raising claims for breach of contract and bad faith under Louisiana law. Doc. 1.

The matter is now set for jury trial before the undersigned on October 2, 2023. Doc. 11. AmGuard moves for summary judgment on plaintiff's bad faith claim relating to the BPP coverage, arguing that it timely issued payment after a reasonable investigation of the claim. Doc. 17. Plaintiff opposes the motion. Doc. 19.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable

to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). The words of the policy are given their generally prevailing meaning and "interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 516–17 (5th Cir. 2005) (citing La. Civ. Code arts. 2047, 2050). Ambiguities in the policy must be construed against the insurer and in favor of coverage. *Id.* The court resolves an ambiguity by asking "how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Id.*

Louisiana Revised Statute § 22:1892 makes an insurer liable for penalties and attorney fees in certain circumstances based on its bad faith handling of a claim. To prevail under this statute, the insured must show that (1) the insurer received satisfactory proof of loss; (2) the insurer failed to tender payment within 30 days of receiving this proof; and (3)

the insurer's failure to pay is "arbitrary, capricious, or without probable cause." *Guillory v. Lee*, 16 So.3d 1104, 1126 (La. 2009). Similarly, Louisiana Revised Statute § 22:1973(B)(5) provides for an award of penalties when an insurer fails to pay within 60 days and that failure is "arbitrary, capricious, or without probable cause."

Under Louisiana law, "satisfactory proof of loss" means "only that which is sufficient to fully apprise the insurer of the insured's claims." *La. Bag Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1119 (La. 2008) (internal quotations omitted). "Louisiana decisions demonstrate that 'proof of loss' is a flexible requirement. An insurer of course must receive some kind of notice of a claim before it can act. So long as it receives enough information, the manner in which it obtains the information is immaterial." *Austin v. Parker,* 672 F.2d 508, 520 (5th Cir. 1982) (internal quotations omitted). Whether and when the insurer received "satisfactory proof of loss" sufficient to trigger its payment obligations is a question of fact. *Lamar Adv. Co. v. Zurich Am. Ins. Co.*, 2021 WL 1113451, at *9 (M.D. La. Mar. 22, 2021) (citing 15 William Shelby McKenzie & H. Alston Johnson, III, La. Civ. L. Treatise: Insurance Law and Practice § 11:5 (4th ed. 2020)).

AmGuard assigned Mark Richardson of Engle Martin & Associates to adjust the claim. Doc. 17, att. 3, pp. 24–26. Mr. Richardson completed his initial report on September 29, 2020. Doc. 17, att. 5, ¶ 7; doc. 17, att. 6. There he stated that significant water damage had occurred at the covered premises and that he had confirmed "extensive water damage" to the firm's business personal property. Doc. 17, att. 6, p. 4. He also noted that plaintiff's public adjuster was still in the process of preparing an inventory but that he (Richardson) believed that the business personal property claim would exceed coverage limits. *Id.* at 5.

Based on the extent of damages observed, he recommended that AmGuard make an advance payment of $69,000.00 (half of the BPP coverage limit) to plaintiff. *Id.* at 6.

On October 8, 2020, AmGuard made an advance payment of $50,000.00 to plaintiff under its BPP claim. Doc. 17, att. 3, pp. 44, 97. On October 22 and November 12, 2020, Richardson notified AmGuard that he was still awaiting an inventory from plaintiff documenting its BPP loss. Doc. 17, att. 7, pp. 2–3. On December 3, 2020, he informed AmGuard that he had received the inventory from the public adjuster's office with an estimated $160,870.22 in losses. Doc. 17, att. 8, p. 2. He noted, however, that the inventory included certain personal effects and that they would be working with the public adjuster to redact and resubmit. *Id.* On December 18, 2020, Richardson submitted a status report and payment request for AmGuard to furnish the remainder of the $138,000.00 BPP coverage limit. Doc. 17, att. 9. Richardson indicated, however, that he was awaiting information related to the replacement cost of leased copy machines before he produced a final report. *Id.* He received that information on January 12, 2021, and produced his final report three days later, again recommending that AmGuard issue a payment to cover the BPP limit. Doc. 17, atts. 10 & 11. AmGuard issued this payment on January 26, 2021. Doc. 17, att. 3, p. 47.

Based on the foregoing, AmGuard argues that it timely issued payment after a reasonable investigation of the claim and cannot be held liable for bad faith. As plaintiff notes, however, AmGuard's adjuster recommended an advance payment of at least half of the policy limits from the outset. The final report shows that the copiers totaled only $36,662.40 of the claimed BPP loss, which exceeded the policy limits by over $20,000.00.

Accordingly, plaintiff may persuade a jury as to whether AmGuard acted arbitrarily and capriciously in reducing the recommended advance payment by $19,000.00, to less than one-third of policy limits, while awaiting this documentation.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Partial Summary Judgment [doc. 17] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 24th day of August, 2023.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**